Varun A. Gumaste
Nicholas J. Lewin (*admitted pro hac vice*)
Jonathan F. Bolz (*admitted pro hac vice*)
Adam M. Gitlin (*admitted pro hac vice*)
KRIEGER KIM & LEWIN LLP
500 Fifth Avenue, 34th Floor
New York, NY 10110
Tel: 212.390.9550
Varun.Gumaste@KKLllp.com
Nick.Lewin@KKLllp.com
Jonathan.Bolz@KKLllp.com
Adam.Gitlin@KKLllp.com

*Attorneys for Defendant Corey Flaum*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: BANK OF NOVA SCOTIA SPOOFING LITIGATION | Case No. 3:20-cv-11059-MAS-LHG<br><br>**REPLY IN SUPPORT OF DEFENDANT COREY FLAUM'S MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**<br><br>**Judge:** Hon. Michael A. Shipp<br>**Motion Day:** October 4, 2021<br><br>**ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ................................................................................................................2

    I.    PLAINTIFFS DO NOT STAND IN AN APPROPRIATE RELATIONSHIP TO MR. FLAUM UNDER THE CEA ............................2

    II.   PLAINTIFFS HAVE NOT PLED FRAUDULENT CONCEALMENT .....6

    III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR PRINCIPAL-AGENT LIABILITY AS TO MR. FLAUM ............................................................9

    IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT AS TO MR. FLAUM ......................................................10

    V.   THE CAC SHOULD BE DISMISSED WITH PREJUDICE ....................12

CONCLUSION ...........................................................................................................14

# **TABLE OF AUTHORITIES**

## CASES

*Alvin v. Suzuki*,
    227 F.3d 107 (3d Cir. 2000) ...................................................................................12

*Cargill, Inc. v. Hardin*,
    452 F.2d 1154 (8th Cir. 1971) ...................................................................................5

*Cetel v. Kirwan Financial Group, Inc.*,
    460 F.3d 494 (3d Cir. 2006) .....................................................................................6

*Clean Air Council v. United States Steel Corp.*,
    4 F.4th 204 (3d Cir. 2021) ........................................................................................4

*Commodity Futures Trading Commission v.*
    *Equity Financial Group, LLC*,
    No. 04 Civ. 1512 (RBK),
    2006 WL 3751911 (D.N.J. Dec. 18, 2006) ..............................................................9

*CP Stone Fort Holdings, LLC v. Doe(s)*,
    No. 16 Civ. 4991 (RWG),
    2017 WL 1093166 (N.D. Ill. Mar. 22, 2017) ..........................................................4

*De David v. Alaron Trading Corp.*,
    814 F. Supp. 2d 822 (N.D. Ill. 2011) ...................................................................9, 10

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
    482 F.3d 247 (3d Cir. 2007) ...................................................................................13

*Frey v. Commodity Futures Trading Commission*,
    931 F.2d 1171 (7th Cir. 1991) ...................................................................................5

*Guttman v. Commodity Futures Trading Commission*,
    197 F.3d 33 (2d Cir. 1999) .....................................................................................10

*Hawk Mountain LLC v. Ram Capital Group LLC*,
    689 F. App'x 703 (3d Cir. 2017) ..............................................................................6

*In re Allergan Erisa Litigation*,
    975 F.3d 348 (3d Cir. 2020) ............................................................................13

*In re Ductile Iron Pipe Fittings (DIPF)*
*Indirect Purchaser Antitrust Litigation*,
    No. 12 Civ. 169 (AET),
    2013 WL 5503308 (D.N.J. Oct. 2, 2013) ................................................ 10, 11

*In re Liquid Aluminum Sulfate Antitrust Litigation*,
    No. 16 Md. 2687 (JLL),
    2017 WL 3131977 (D.N.J. July 20, 2017) ....................................................7, 8

*In re Mercedes-Benz Anti-Trust Litigation*,
    157 F. Supp. 2d 355 (D.N.J. 2001).................................................................8

*In re Merrill, Bofa, & Morgan Stanley Spoofing Litigation*,
    No. 19 Civ. 6002 (LJL),
    2021 WL 827190 (S.D.N.Y. Mar. 4, 2021),
    *appeal filed*, No. 21-853 (2d Cir. Apr. 2, 2021).............................................8

*In re Natural Gas Commodity Litigation*,
    337 F. Supp. 2d 498 (S.D.N.Y. 2004) ............................................................8

*In re Platinum & Palladium Antitrust Litigation*,
    No. 14 Civ. 9391 (GHW),
    2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017),
    *on reconsideration*,
    449 F. Supp. 3d 290 (S.D.N.Y. 2020) ............................................................4

*In re Platinum & Palladium Antitrust Litigation*,
    449 F. Supp. 3d 290 (S.D.N.Y. 2020) ............................................................4

*Klein & Co. Futures v. Board of Trade of City of New York*,
    464 F.3d 255 (2d Cir. 2006) ...........................................................................5

*Lake v. Arnold*,
    232 F.3d 360 (3d Cir. 2000) .........................................................................12

*McWreath v. Range Resources-Appalachia, LLC*,
 645 F. App'x 190 (3d Cir. 2016) ................................................................. 12

*Montich v. Miele USA, Inc.*,
 849 F. Supp. 2d 439 (D.N.J. 2012) .............................................................. 12

*Nicholas v. Saul Stone & Co. LLC*,
 224 F.3d 179 (3d Cir. 2000) ......................................................................... 2

*Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.*,
 484 U.S. 97 (1987) .................................................................................. 5, 6

*Prudential Insurance Co. of America v. United States Gypsum Co.*,
 359 F.3d 226 (3d Cir. 2004) ......................................................................... 6

*Russello v. United States*,
 464 U.S. 16 (1983) ....................................................................................... 4

*Snyder v. Farnam Companies, Inc.*,
 792 F. Supp. 2d 712 (D.N.J. 2011) .............................................................. 11

*United States Commodity Futures Trading Commission v. Oystacher*,
 203 F. Supp. 3d 934 (N.D. Ill. 2016) ............................................................ 4

*United States ex rel. Zizic v. Q2Administrators, LLC*,
 728 F.3d 228 (3d Cir. 2013) ....................................................................... 13

*Volkart Bros., Inc. v. Freeman*,
 311 F.2d 52 (5th Cir. 1962) .......................................................................... 5

*Wallace v. Kato*,
 549 U.S. 384 (2007) ..................................................................................... 8

**STATUTES, RULES, AND REGULATIONS**

7 U.S.C.
 § 13(a)(2) ...................................................................................................... 3
 § 25(a)(1)(D) ................................................................................................ 3
 § 6c(a)(5) ...................................................................................................... 3
 § 9(1) ............................................................................................................ 3

Dodd-Frank Wall Street Reform and Consumer Protection Act,
    Pub. L. No. 111-203, 124 Stat. 1376 (2010) ....................................................3

**OTHER AUTHORITIES**

Restatement (Third) of Restitution and Unjust Enrichment (2011) .................. 11, 12

Nothing in Plaintiffs' opposition changes the fact that their case is fundamentally and irretrievably flawed. Aside from a conclusory allegation of "economic losses," they do not allege that Defendants' conduct impacted them in any way. They do not allege that they traded with Defendants or in the wake of any spoofing activity. They do not allege any relationship – or even any interactions – with Defendants.

For the reasons set forth in the BNS Defendants' reply, which Mr. Flaum joins and incorporates by reference, these deficiencies are fatal to the entire case. As the BNS Defendants have explained, Plaintiffs lack Article III standing. They have failed to plausibly allege actual damages, as required by the CEA. And they cannot recover in unjust enrichment because there is no relationship between the parties and Defendants received no benefit from Plaintiffs. Furthermore, Plaintiffs are years too late in filing, and they attempt to assert a spoofing claim that is not available to private litigants. These deficiencies in Plaintiffs' case require dismissal of the claims against Mr. Flaum.

As we argued in our opening brief and discuss further below, Plaintiffs' claims against Mr. Flaum also fail because: (1) Plaintiffs do not allege that they are in an "appropriate relationship" with Mr. Flaum under the CEA; (2) Plaintiffs' fraudulent concealment theory is based in part on allegations that do not apply to Mr. Flaum; (3) Mr. Flaum is not a proper defendant for a principal-agent claim;

1

and (4) Plaintiffs have failed to (a) specify under which state's law their unjust enrichment claim is asserted or (b) allege that Mr. Flaum received any benefit from his alleged spoofing, let alone a benefit from Plaintiffs. Nothing in Plaintiffs' opposition cures these deficiencies.

## ARGUMENT

### I. PLAINTIFFS DO NOT STAND IN AN APPROPRIATE RELATIONSHIP TO MR. FLAUM UNDER THE CEA

Plaintiffs have not stated a claim against Mr. Flaum under the CEA. As the BNS Defendants explain in their reply, Plaintiffs have not plausibly alleged an injury in fact or actual damages. *See* BNS Defs.' Reply at 1–7, ECF No. 48.[1] Furthermore, as we explained in our opening brief, Plaintiffs' CEA claims against Mr. Flaum fail because Plaintiffs have not alleged the requisite relationship between themselves and Mr. Flaum. *See* Flaum Mem. at 4–11, ECF No. 40-1. The CEA only authorizes a private right of action where the defendant "stand[s] in an appropriate relationship to the plaintiff with respect to the violative conduct." *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 186 (3d Cir. 2000).

Plaintiffs do not address this argument directly. But they argue that spoofing is a form of market manipulation for which private claimants can bring a CEA

---

[1] The absence of an injury in fact is a jurisdictional defect that requires dismissal of the entire case, not just the CEA claims.

2

claim. *See* Pls.' Opp. at 7–10, ECF No. 43.[2] However, Plaintiffs' arguments fly directly in the face of well-established principals of statutory interpretation.

The structure and history of the CEA make clear that, for purposes of the CEA, spoofing is not "manipulation." It is a "disruptive practice," a term that Congress introduced to the CEA as part of the Dodd-Frank Act. Pub. L. No. 111-203, § 747, 124 Stat. 1376, 1739 (2010). The CEA has separate provisions prohibiting manipulation and disruptive practices. *See* 7 U.S.C. §§ 6c(a)(5), 9(1). Moreover, in criminalizing certain conduct prohibited by the statute, it refers to manipulation and disruptive practices in the disjunctive. 7 U.S.C. § 13(a)(2).[3] Plainly, they mean – and were intended by Congress to mean – different things.

Section 22 of the CEA creates a private right of action for claims based on manipulation but says nothing about disruptive practices. When Congress uses a particular word or phrase in one section of a statute, but not in another, courts presume that Congress included it in one place and excluded it from the other

---

[2] A victim of a "manipulative device or contrivance" or price manipulation stands in an appropriate relationship with the alleged violator and can file suit under the CEA. *See* 7 U.S.C. § 25(a)(1)(D)(i), (ii).

[3] Section 13(a)(2) makes it a felony to, *inter alia*, "manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or of any swap" *or* "knowingly to violate the provisions of" 7 U.S.C. § 6c, which prohibits spoofing.

intentionally. *See Clean Air Council v. United States Steel Corp.*, 4 F.4th 204, 209 (3d Cir. 2021) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Plaintiffs implicitly concede that they cannot assert a standalone spoofing claim, but they argue that "[s]poofing is the conduct that underlies Plaintiffs' manipulation claims – it is not the cause of action itself." Pls.' Opp. at 10. In other words, they try to shoehorn a disruptive practices claim, which private plaintiffs cannot assert, into a manipulation claim. This interpretation of the CEA is problematic on its face because it would conflict with the plain text of the statute and undermine the distinction between manipulation and disruptive practices that Congress intentionally created.[4]

Plaintiffs argue that "[a]ppellate courts have declined to exclude narrow categories of conduct from the definition of illicit forms of manipulation." Pls.'

---

[4] Plaintiffs cite several cases for the proposition that private plaintiffs can bring manipulation claims based on spoofing. Pls.' Opp. at 8. But none of them discusses whether a private plaintiff can bring such a claim under the CEA. *See U.S. Commodity Futures Trading Comm'n v. Oystacher*, 203 F. Supp. 3d 934, 937 (N.D. Ill. 2016) (lawsuit for alleged CEA violations brought by the CFTC – not a private individual); *CP Stone Fort Holdings, LLC v. Doe(s)*, No. 16 Civ. 4991 (RWG), 2017 WL 1093166 (N.D. Ill. Mar. 22, 2017) (lawsuit that involved alleged violations of the Securities Exchange Act of 1934, not the CEA); *In re Platinum & Palladium Antitrust Litig.*, No. 14 Civ. 9391 (GHW), 2017 WL 1169626, at *6 (S.D.N.Y. Mar. 28, 2017) (mentioning spoofing only on one occasion – when summarizing the plaintiffs' allegations – and not in the context of a CEA private right of action analysis), *on reconsideration*, 449 F. Supp. 3d 290, 299 (S.D.N.Y. 2020) (same).

Opp. at 9. But the cases Plaintiffs cite for that proposition are inapposite. As an initial matter, they all predate Dodd-Frank, which explicitly distinguished disruptive practices from manipulation. Furthermore, none of Plaintiffs' cases concern spoofing; they all concern whether a "squeeze" qualifies as manipulation under the CEA. *See Frey v. C.F.T.C.*, 931 F.2d 1171, 1175 (7th Cir. 1991); *Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1163 (8th Cir. 1971); *Volkart Bros., Inc. v. Freeman*, 311 F.2d 52, 58 (5th Cir. 1962). This distinction is critical. In contrast to spoofing – which the CEA expressly classifies as a disruptive practice – at the time these cases were decided, the CEA was silent about squeezes. Accordingly, here, there is a decisive data point that was absent from *Frey*, *Cargill*, and *Volkart*: a clear congressional directive.

Plaintiffs' references to CFTC regulatory actions are likewise unavailing. *See* Pls.' Opp. at 7–8. Unlike the CFTC, private plaintiffs can only bring cases that Section 22 authorizes. *See Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 259 (2d Cir. 2006) ("CEA § 22 enumerates the only circumstances under which a private litigant may assert a private right of action for violations of the CEA."); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 107 (1987) ("The availability of . . . private rights of action . . . supplements, but does not substitute, for the regulatory and enforcement program

5

of the CFTC." (internal citations omitted)).  Because Section 22 does not authorize spoofing claims, Plaintiffs' CEA claims fail and must be dismissed.

## II.   PLAINTIFFS HAVE NOT PLED FRAUDULENT CONCEALMENT

Plaintiffs' CEA claims also fail because the CEA's two-year statute of limitations has run and there is no basis for equitable tolling.  *See* BNS Defs.' Reply at 7–12.  As the BNS Defendants explain, Plaintiffs had notice of their alleged injuries for well over two years before they filed suit, including through civil actions involving Plaintiffs.[5]  *See id.* at 8–9.  Furthermore, Plaintiffs have not

---

[5] In response, Plaintiffs assert, among other arguments, that the CEA's limitations period was not triggered until they knew the identity of Defendants.  In support of that proposition, Plaintiffs cite to one Third Circuit case, *Prudential Insurance Co. of America v. United States Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004).  However, Plaintiffs' argument is undermined by the fact that it overlooks more recent Third Circuit authority.  In fact, since *Prudential Insurance*, the Third Circuit has on multiple occasions articulated the standard for inquiry notice, without any reference to the identity of the defendant.  *See Hawk Mountain LLC v. Ram Cap. Grp. LLC*, 689 F. App'x 703, 706 (3d Cir. 2017) ("We adhere to an injury-discovery rule for RICO civil actions: The clock starts when the plaintiff knew or should have known of her injuries." (citation omitted)); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506–07 (3d Cir. 2006) ("[T]he dispositive question concerning the federal RICO claims here is whether plaintiffs were on 'inquiry notice' of their injuries by August 1995.  In determining when a RICO claim accrues, we apply an injury discovery rule whereby a RICO claim accrues when plaintiffs knew or should have known of their injury." (citation and internal quotation marks omitted)).  Although these cases discussed the standard for inquiry notice in the context of RICO lawsuits, the court in *Prudential Insurance* also addressed the test for accrual in the context of RICO claims.  *See Prudential Insurance*, 359 F.3d at 233.  These cases demonstrate that under Third Circuit law, the limitations period for Plaintiffs' claims began years before 2018, when they

plausibly alleged, as they must, that they undertook any due diligence or investigation following such notice. *See id.* at 11. Finally, Plaintiffs' fraudulent concealment argument fails because Plaintiffs plead no facts plausibly showing concealment, let alone with the particularity Rule 9(b) requires. *See id.* at 12.

As we explained in our opening brief, Plaintiffs' assertion that Mr. Flaum engaged in fraudulent concealment is particularly weak. *See* Flaum Mem. at 11–12. Their invocation of the doctrine is based in significant part on statements that BNS allegedly made to the public and regulators. *See* CAC ¶¶ 82–83. But the CAC does not allege that Mr. Flaum played any role in making those statements.

Thus, Plaintiffs' only basis for asserting that Mr. Flaum engaged in fraudulent concealment is the allegation that spoofing is "inherently self-concealing." CAC ¶ 79. In Plaintiffs' view, spoofing itself tolls the statute of limitations; nothing more is required. *See* Pls.' Opp. at 32–33.

This argument runs contrary to case law and common sense. The three cases Plaintiffs cite in support of this argument are inapposite. None of them concerns spoofing, and none of them found a statute of limitations to be tolled based solely on self-concealing conduct. *See In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16 Md. 2687 (JLL), 2017 WL 3131977, at *17 (D.N.J. July 20, 2017)

---

initially learned of their injury – not when they learned of the particular Defendants who they claim caused it.

(discussing fraudulent concealment in the antitrust context); *In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 371 (D.N.J. 2001) (same); *In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 513 (S.D.N.Y. 2004) (discussing fraudulent concealment in the context of wash trades). In fact, *Mercedes-Benz* rejected the very proposition Plaintiffs cite it for – that self-concealing conduct can toll the statute of limitations even "without . . . more acts of concealment." Pls.' Opp. at 32. To the contrary, *Mercedes-Benz* expressly held that the plaintiff was required to "prove a distinct, affirmative act of concealment," either extrinsic to or in furtherance of the underlying conduct. 157 F. Supp. 2d at 369.

In *In re Merrill, Bofa, & Morgan Stanley Spoofing Litigation*, No. 19 Civ. 6002 (LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021), *appeal filed*, No. 21-853 (2d Cir. Apr. 2, 2021), the court rejected the argument that spoofing alone constitutes fraudulent concealment, noting that the argument "proves too much." *Id.* at *9. Under Plaintiffs' approach, equitable tolling would occur in every spoofing case. But "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). For these reasons and those set forth in the BNS Defendants' reply, Plaintiffs have fallen well short of their burden to establish fraudulent concealment in this case. This is, therefore, another basis for dismissing Plaintiffs' CEA claims against Mr. Flaum.

## III. PLAINTIFFS FAIL TO STATE A CLAIM FOR PRINCIPAL-AGENT LIABILITY AS TO MR. FLAUM

Plaintiffs' principal-agent claim against Mr. Flaum must be dismissed for another reason: he is not a proper defendant. In Plaintiffs' opposition brief, Plaintiffs state that Mr. Flaum's "role in the principal-agent course of conduct is as one of BNS's agents." Pls.' Opp. at 15. That is all the Court needs to know. Principal-agent liability under Section 2(a)(1)(B) of the CEA is a basis for holding *principals* liable, not agents. *See C.F.T.C. v. Equity Fin. Grp., LLC*, No. 04 Civ. 1512 (RBK), 2006 WL 3751911, at *9 (D.N.J. Dec. 18, 2006) ("Courts interpret [the principal-agent liability] provision of the Act to codify the common law principle of respondeat superior. Under the common law doctrine, as well as principle liability under the Act, *a principal is liable for the torts committed by its agents* when the agents act in furtherance of the principal's business." (citations omitted; emphasis added)), *on reconsideration*, 2007 WL 1038754 (D.N.J. Mar. 30, 2007). Because Mr. Flaum is not alleged to have been anyone's principal, the principal-agent claim against him fails. *See De David v. Alaron Trading Corp.*, 814 F. Supp. 2d 822, 831 (N.D. Ill. 2011) (dismissing the plaintiffs' claims for principal-agent liability under the CEA against an individual defendant because he "was an employee, not an employer" and therefore the "claims d[id] not apply to

9

him").[6]  For this reason, and because Plaintiffs have not alleged an underlying violation of the CEA, *see* BNS Defs.' Reply at 14, Plaintiffs' principal-agent claim against Mr. Flaum should be dismissed.

### IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT AS TO MR. FLAUM

Plaintiffs have also failed to state a claim against Mr. Flaum for unjust enrichment.  As we explained in our opening brief, a plaintiff must place a defendant on notice of the law under which he or she is bringing a claim.  *See* Flaum Mem. at 13–14.  Failure to do so is grounds for dismissal.  *See In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, No. 12 Civ. 169 (AET), 2013 WL 5503308, at *8 (D.N.J. Oct. 2, 2013) (collecting cases and dismissing an "unjust enrichment claim under Rule 12(b)(6) for failure to specify the particular state law under which [the plaintiffs] intend[ed] to proceed").

Plaintiffs have no serious response to this argument.  First, they contend that the Court should ignore their deficient pleading because the BNS Defendants "agreed that the governing law with respect to this claim is that of the state of New

---

[6] Plaintiffs' citation to *Guttman v. Commodity Futures Trading Commission*, 197 F.3d 33, 39 (2d Cir. 1999), does not say otherwise.  In that case, a *principal* challenged the CFTC's determination that he should be vicariously liable for his agent's trades.  *See Guttman*, 197 F.3d at 39.  The court did not hold, or even consider, whether an *agent* could be held liable under Section 2(a)(1)(B).

10

Jersey." Pls.' Opp. at 18. The contention is false. *See* BNS Defs.' Br. at 31 n.11, ECF No. 38-1 (assuming solely for purposes of argument that New Jersey law applies). Even if it were otherwise, Mr. Flaum is not one of the BNS Defendants. Second, Plaintiffs cite *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712 (D.N.J. 2011) for the proposition that "unjust enrichment laws do not vary in any substantive manner from state to state." Pls.' Opp. at 18 (internal quotation marks omitted). But *Snyder* is inapt. It was a choice-of-law case; it did not address whether a plaintiff's unjust enrichment claim should be dismissed because the complaint failed to specify the governing law. *See Snyder*, 792 F. Supp. 2d at 723. *In re Ductile Iron Pipe Fittings* considered and rejected exactly the argument Plaintiffs now make – that the court should overlook the plaintiff's failure to identify under which state's law it was asserting unjust enrichment because "the law of unjust enrichment does not vary materially from state to state." 2013 WL 5503308, at *8. This Court should do the same.

Furthermore, under any state's law, the unjust enrichment claim fails on the merits. As the BNS Defendants explain, "the parties are strangers to one another." BNS Defs.' Reply at 14. Plaintiffs neither alleged a relationship between the parties nor the receipt of any benefit by Defendants. *See id.* at 14–15. As we noted in our opening brief, this is fatal to any unjust enrichment claim. *See* Flaum Mem. at 14; *see also* Restatement (Third) of Restitution and Unjust Enrichment § 1

11

(2011) ("Liability in restitution derives from *the receipt of a benefit* whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant." (emphasis added)); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 459 (D.N.J. 2012) ("New Jersey law requires that a plaintiff have conferred a direct benefit on the defendant."). Plaintiffs' allegations are particularly deficient as to Mr. Flaum, who is not alleged to have profited from his conduct at all. *See* CAC ¶ 23 (alleging that Mr. Flaum acted "within the scope of [his] employment with BNS"). For all these reasons, Plaintiffs' unjust enrichment claim against Mr. Flaum should be dismissed.

## V.   THE CAC SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs' request for leave to amend should be denied, and the CAC should be dismissed with prejudice. A district court may deny leave to amend when, *inter alia*, "amendment would be futile." *McWreath v. Range Res.-Appalachia, LLC*, 645 F. App'x 190, 196 (3d Cir. 2016) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). "An amendment is futile if the amended complaint would not survive a motion to dismiss. . . ." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (citation omitted). For the reasons stated above, in our opening brief, and in the BNS Defendants' briefs, the deficiencies in the CAC are myriad, fundamental, and incurable. And critically, Plaintiffs have not identified any unpled facts that would allow an amended complaint to withstand a future motion to dismiss. *See* BNS

12

Defs.' Reply at 15. Plaintiffs simply seek leave to amend "to cure any deficiencies the Court identifies," without further explanation. Pls.' Opp. at 33.

That is insufficient. "[A] bare request [for leave to amend] in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . .—does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) (internal quotation marks omitted). Where a request to amend is devoid of any indication of how plaintiffs would amend their complaint, dismissal with prejudice is appropriate. *In re Allergan Erisa Litig.*, 975 F.3d 348, 356–58 (3d Cir. 2020) (affirming dismissal with prejudice where plaintiffs requested leave to amend in their opposition to the motion to dismiss but "gave no hint as to how they would further amend their complaint"); *see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252–53 (3d Cir. 2007) ("In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint."); *In re Allergan Erisa Litig.*, 975 F.3d at 358 ("We do not ask district courts to be mind readers but have instead recognized repeatedly that a district court does not abuse its discretion by denying leave to amend when the party seeking leave does not attach a draft amended complaint to its request."). Accordingly, the CAC should be dismissed with prejudice and without leave to amend.

13

## **CONCLUSION**

For the foregoing reasons, the CAC should be dismissed as to Defendant Corey Flaum with prejudice.

Dated: September 15, 2021  
New York, New York

Respectfully submitted,

Varun A. Gumaste  
Nicholas J. Lewin (*admitted pro hac vice*)  
Jonathan F. Bolz (*admitted pro hac vice*)  
Adam M. Gitlin (*admitted pro hac vice*)  
KRIEGER KIM & LEWIN LLP  
500 Fifth Avenue, 34th Floor  
New York, NY 10110  
Tel: 212.390.9550  
Varun.Gumaste@KKLllp.com  
Nick.Lewin@KKLllp.com  
Jonathan.Bolz@KKLllp.com  
Adam.Gitlin@KKLllp.com

*Attorneys for Defendant Corey Flaum*