CARELLA, BYRNE, CECCHI, OLSTEIN,
    BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re BANK OF NOVA SCOTIA SPOOFING LITIGATION | ) ) ) | No. 3:20-cv-11059-MAS-RLS |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR |
| ALL ACTIONS. | ) ) ) ) | FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF DISTRIBUTION PLAN |

# TABLE OF CONTENTS

**Section**                                                                    **Page**

I.      INTRODUCTION ........................................................................................1

II.     PROCEDURAL HISTORY ..........................................................................3

III.    NOTICE HAS BEEN PROVIDED TO THE CLASS IN
        COMPLIANCE WITH RULE 23, DUE PROCESS, AND THE
        COURT'S PRELIMINARY APPROVAL ORDER ....................................6

IV.     THE SETTLEMENT WARRANTS THE COURT'S FINAL
        APPROVAL ..................................................................................................8

        A.    Class Plaintiffs and Lead Counsel Have More Than Adequately
              Represented the Class.......................................................................10

        B.    The Settlement Negotiations Were Conducted at Arm's Length .......12

        C.    The Settlement Is Adequate in Light of the Costs, Risks, and
              Delay of Trial and Appeal ................................................................13

              1.    Risks of Establishing Liability and Damages ..........................15

              2.    The Settlement Falls Within the Range of
                    Reasonableness .......................................................................15

        D.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors..........17

              1.    The Proposed Method for Distributing Relief Is Effective ......17

              2.    The Requested Attorneys' Fees Are Reasonable......................18

              3.    The Parties Have No Other Agreements Beside an
                    Agreement to Address Requests for Exclusion ........................18

              4.    Class Members Will Be Treated Equitably ..............................19

V.      THE COURT SHOULD CERTIFY A SETTLEMENT CLASS FOR
        SETTLEMENT PURPOSES..........................................................................21

A.    The Settlement Class Satisfies Rule 23(a) .........................................21

    1.    The Settlement Class is Sufficiently Numerous ......................22

    2.    Common Questions of Law and Fact Bind the Settlement Class .................................................................................................22

    3.    Class Plaintiffs' Claims Are Typical ........................................23

    4.    Class Plaintiffs and Lead Counsel Are Adequate....................24

B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)................................................................................................25

    1.    Common Legal and Factual Questions Predominate...............25

    2.    A Class Action Is Superior to Other Methods of Adjudication..............................................................................26

VI.    THE COURT SHOULD APPROVE THE PROPOSED DISTRIBUTION PLAN ..................................................................27

VII.    CONCLUSION..............................................................................28

# TABLE OF AUTHORITIES

**Case**                                                                 **Page(s)**

*Alves v. Main*,
   2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151
   (3d Cir. 2014)...........................................................................11, 13

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................21, 25, 27

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)...............................................................25

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013) ................................................19

*Bogosian v. Gulf Oil Corp.*,
   561 F.2d 434 (3d Cir. 1977) ................................................24

*Bredbenner v. Liberty Travel, Inc.*,
   2011 WL 1344745 (D.N.J. Apr. 8, 2011) ...........................13

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*,
   2006 WL 891362 (D.N.J. Apr. 4, 2006)..............................22

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ....................18

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................19

*In re CIGNA Corp. Sec. Litig.*,
   2007 WL 2071898 (E.D. Pa. July 13, 2007) ........................8

*In re Comcast Corp. Set-Top Television Box Antitrust Litig.*,
   333 F.R.D. 364 (E.D. Pa. 2019)..........................................13

*In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*,
   No. 14-MD-2548 (VEC) (S.D.N.Y.) ....................................11, 14, 16

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ...............................................................................8

*Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*,
41 F.4th 71 (2d Cir. 2022) ................................................................................16

*Huffman v. Prudential Ins. Co. of Am.*,
2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)......................................................15

*In re Ikon Office Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000).........................................................................19

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012)........................................................................21

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*,
2013 WL 504857 (E.D. Pa. Feb. 12, 2013)........................................................21

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) ..............................................................................27

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ........................................................................22, 23

*McDonough v. Toys R Us, Inc.*,
80 F. Supp. 3d 626, 648 (E.D. Pa. 2015)...........................................................19

*In re Mercedes-Benz Antitrust Litig.*,
213 F.R.D. 180 (D.N.J. 2003)............................................................................26

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
2010 WL 547613 (D.N.J. Feb. 9, 2010) ............................................................15

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
2016 WL 5844319 (D.N.J. Oct. 3, 2016) ...........................................................15

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015), *amended*, 2015 WL 12827803
(E.D. Pa. May 8, 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016) .............................11

*Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ..................................................................................23

*In re NFL Players Concussion Injury Litig.*,
775 F.3d 570 (3d Cir. 2014) ...................................................................21

*Oliver v. BMW of North America, LLC*,
2021 WL 870662 (D.N.J. Mar. 8, 2021) ...............................................13

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) .............................................27

*In re Pet Food Prods. Liab. Litig.*,
2008 WL 4937632 (D.N.J. Nov. 18, 2008) ............................................21

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) .....................................................22, 24, 26

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26, 2010) ...........................................10

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ...................................................................22

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) .....................................................20, 25, 26

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) .................................................................26

*In re Viropharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ................................8, 11, 28

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .................................................................................22

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .........................................................8, 10, 11, 12

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 23 ...............................................................................................*passim*

## SECONDARY AUTHORITIES

William Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §4:25 (4th ed. 2010)......................................................................25

## I.    INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Class Plaintiffs[1] move for final approval of a $6,600,000 Settlement with Defendants,[2] including approval of the Distribution Plan.[3]

Class Plaintiffs alleged that from at least January 1, 2008 through at least July 31, 2016 (the "Class Period"), Defendants violated the Commodity Exchange Act, 7 U.S.C. §1, *et seq.* (the "CEA") and common law by intentionally manipulating the prices of Precious Metals Futures contracts and Options on those contracts traded on the Commodity Exchange Inc. ("COMEX") and the New York Mercantile Exchange ("NYMEX"). *See generally* Consolidated Complaint ("Compl.") (ECF 31). Class Plaintiffs alleged that Defendants' manipulation occurred through "spoofing," a technique whereby traders place orders with the intent to cancel those orders prior

---

[1]    Capitalized terms not defined herein have the same meaning as in the Stipulation and Agreement of Settlement, dated November 2, 2022 (the "Settlement Agreement") (ECF 79-3), attached to the Declaration of James E. Cecchi, dated November 2, 2022. ECF 79-2.

[2]    "Defendants" collectively refers to the Bank of Nova Scotia, Scotia Capital (USA) Inc., Scotia Holdings (US), Inc., The Bank of Nova Scotia Trust Company of New York, and Corey Flaum.

[3]    Lead Counsel are concurrently moving for an award of attorneys' fees, litigation expenses, and service awards to named plaintiffs for their work on behalf of the Class.

to execution in order to send false and illegitimate signals of supply and demand to the market.

The Court granted preliminary approval to the Settlement on May 12, 2023. ECF 84.  Following that order, the notice and claims process began.  To date there have been no objections or requests for exclusion.  *See* Declaration of Jack Ewashko on behalf of A.B. Data, Ltd. Regarding Notice Administration (ECF 87-1) ("Ewashko Declaration"), ¶¶21-25.  The Parties reached an agreement to settle this Action in exchange for a $6,600,000 cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class and in exchange for the release of all claims against Defendants.

The Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and this Circuit's relevant governing standards.  The Parties reached this Settlement only after arm's length, zealous, and good-faith negotiations and with the assistance of a neutral, third-party JAMS mediator, Jed D. Melnick.  Moreover, the Settlement is separate from and in addition to the relief potentially available to the Settlement Class under the Victim's Compensation Fund offered by the Department of Justice ("DOJ") Deferred Prosecution Agreement ("DPA") with Defendants.  Balanced against the risks of protracted and uncertain litigation, the Settlement represents a

very good recovery; the amount of compensation potentially[4] available to the Settlement Class when combined with the Victim's Compensation Fund has effectively doubled from $6,622,190 to approximately $13.2 million. By contrast, as in any complex case, the Class could receive nothing or a far lower sum after class certification, summary judgment or trial, and any appeals.

The Settlement also satisfies the additional criteria for final approval. Notice to potential Class Members complies with Rule 23 and due process. The proposed Settlement Class meets all of the requirements of Rule 23 for certification. And the Distribution Plan is a fair, reasonable, and rational method for distributing the Settlement proceeds to the Class. It treats Class Members equitably and ensures that each Class Member that submits a valid Proof of Claim will share in the monetary relief. Accordingly, Class Plaintiffs and Lead Counsel respectfully submit that the Court should finally approve the Settlement.

## II. PROCEDURAL HISTORY

On August 21, 2020, plaintiffs Casey Sterk and Kevin Maher filed the initial class action complaint alleging Defendants violated the CEA, 7 U.S.C. §1, *et seq.* and common law by intentionally manipulating the prices of Precious Metals Futures

---

[4]    The DOJ maintains full discretion to administer the Victim's Compensation Fund as it sees fit. *See* www.justice.gov/criminal-vns/bank-nova-scotia-deferred-prosecution-agreement-dpa.

contracts and Options on those contracts traded on the COMEX and NYMEX. *See generally* Compl. at ECF 31.

Additional actions concerning the same misconduct were filed, and on October 29, 2020, the Court consolidated all these related cases into this Action. ECF 17. The plaintiffs in these consolidated actions filed a single amended consolidated complaint against Defendants on May 4, 2021. ECF 31. Defendants filed motions to dismiss the consolidated complaint on June 18, 2021 and July 2, 2021, respectively, and briefing from both sides concluded on September 15, 2021. ECFs 38, 40, 43, 48-49.

By order dated January 20, 2022, the Court converted Defendants' motions to dismiss to motions for summary judgment on the issue of timeliness of Class Plaintiffs' claims. ECF 50. In that same order, the Court indicated it would require discovery to resolve the timeliness and fraudulent concealment issues, and it directed the Parties to file a letter with their respective positions as to the scope of that discovery. *Id.*

Thereafter, the Parties began talks to resolve the case through mediation. To that end, the Parties sought and were granted several extensions to file the discovery letter required by the Court. ECFs 51-54, 57-60. Class Plaintiffs and Bank of Nova Scotia agreed to the selection of Jed D. Melnick of JAMS as Mediator. After receiving briefing from Class Plaintiffs and Bank of Nova Scotia, the Mediator held

a full day, in-person mediation session, which concluded without reaching a settlement.

Nonetheless, Class Plaintiffs and Bank of Nova Scotia continued negotiating at arm's length with the assistance of the Mediator.  On or about July 28, 2022, the Parties reached an agreement in principle to resolve the case for $6.6 million.  On August 4, 2022, the Parties executed a binding settlement term sheet, and thereafter negotiated a formal Settlement Agreement that was executed on November 2, 2022.

On November 2, 2022, Class Plaintiffs filed a Motion for Preliminary Approval of Settlement, along with supporting papers, including the Settlement Agreement, Class Notice, and the Distribution Plan.  ECF 79.  The Court entered an order preliminarily approving the Settlement and authorizing notice ("Preliminary Approval Order") on May 12, 2023.  ECF 84.

As detailed below, notice has been provided to the Class in accordance with the Court's Preliminary Approval Order.  *See* ECF 87-1.  Counsel for Defendants mailed the required notices under the Class Action Fairness Act, 28 U.S.C. §1715.  Objections to, or requests to be excluded from, the Settlement are due by September 22, 2023, and the Court has scheduled the Fairness Hearing for November 6, 2023.  Class Plaintiffs will respond to any objections received in the reply memorandum.

## III.  NOTICE HAS BEEN PROVIDED TO THE CLASS IN COMPLIANCE WITH RULE 23, DUE PROCESS, AND THE COURT'S PRELIMINARY APPROVAL ORDER

Rule 23(e), which governs notice requirements for class action settlements, provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  In addition, Rule 23(c)(2)(B) requires that a certified class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Notice of Proposed Class Action Settlement ("Notice") and Summary Notice of Proposed Class Action Settlement ("Summary Notice") were approved by the Court in the Preliminary Approval Order, and fully comply with Rule 23.  ECF 84, ¶¶12-16.  Among other disclosures, the Notice apprises Class Members of the nature of this Action, the definition of the Class, the claims and issues in the Action, and the claims that will be released in the Settlement.  The Notice also: (i) advises that a Class Member may enter an appearance through counsel; (ii) describes the binding effect of a judgment on Class Members; (iii) states the procedures and deadline for Class Members to exclude themselves from the Class or to object to the proposed Settlement, the Distribution Plan, or the requested attorneys' fees and expenses; (iv) states the procedures and deadline for submitting a Proof of Claim; and (v) provides the date, time, and location of the Fairness

Hearing.  The contents of the Notice and Summary Notice, therefore, satisfy all applicable requirements.

The Notice Program here has since been carried out.  As detailed in the Ewashko Declaration, A.B Data sent more than 5,000 Notices via U.S. Mail as part of the direct notice efforts.  ECF 87-1, ¶¶4-9.  Media notice has also been accomplished.  Those efforts included the issuance of a news release, publication of the Summary Notice in *Investor's Business Daily*, the running of banner advertisements in various financial and business websites, such as Barrons.com, BusinessInsider.com,    WSJ.com,    reuters.com,    NewYorkTimes.com,    and finance.yahoo.com.  Ads were also run on LinkedIn and Google AdWords.  *See id.*, ¶¶11-15.

Finally, the dedicated Settlement and online claim website – www. bankofnovascotiaspoofingsettlement.com – is active.  *Id.*, ¶16.  The website address was provided in all printed notice materials and accessible through an embedded link in the digital Notices.  *Id.*  Class Members may file claims on the Settlement website. *Id.*  Class Members may also obtain important Court documents, including the Settlement Agreement and Preliminary Approval Order.  *Id.*  The website has been visited 6,819 times as of September 1, 2023.  *Id.*, ¶18.

This combination of notice combining direct and media notice constitutes "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B);

*see also, e.g.*, *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *5 (E.D. Pa. Jan. 25, 2016).

## IV.    THE SETTLEMENT WARRANTS THE COURT'S FINAL APPROVAL

There is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (stating that such presumption is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'")[5]; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re CIGNA Corp. Sec. Litig.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.").

Rule 23(e)(2) identifies the following factors to be considered at final approval:

> (2) ***Approval of the Proposal***.   If the proposal would bind class members, the court may approve it only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:

---

[5]    All internal citations and emphasis are omitted unless otherwise indicated.

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

These factors are considered alongside, and largely overlap with, those set forth by the Third Circuit in *Girsh v. Jepson*:

(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

521 F.2d 153, 157 (3d Cir. 1975).[6]  The Third Circuit has also explained that there is an initial presumption that a settlement is fair if: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Warfarin*, 391 F.3d at 535.

As detailed below, each of these factors supports final approval of the Settlement.

### A.    Class Plaintiffs and Lead Counsel Have More Than Adequately Represented the Class

The first factor under Rule 23(e)(2) concerns the adequacy of representation provided by the class representatives and class counsel.  *See* Rule 23(e)(2)(A).  This overlaps with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed.  *See Girsh*, 521 F.2d at 157; *see also Warfarin*, 391 F.3d at 535 (noting similar considerations for applying presumption of fairness).

Class Plaintiffs and Lead Counsel have vigorously pursued this Action. Among many other undertakings, they advanced the Class's claims in a thoroughly researched and investigated Consolidated Complaint, responded to Defendants'

---

[6]    The *Girsh* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'"  *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

voluminous motion-to-dismiss challenges, and consulted with financial industry experts to understand the market, identify the scope of the misconduct and develop a damages model.  Class Plaintiffs through Lead Counsel protected the interests of the Class by appearing and filing a brief objecting to the third settlement agreement in *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, No. 14-MD-2548 (VEC) (S.D.N.Y.) ("*Gold Fix*") to prevent the potential release of claims and corresponding damages in the Action.  Finally, Class Plaintiffs and Lead Counsel engaged in arm's-length mediation which involved detailed mediation statements, expert work, and presentations.  Class Plaintiffs and Lead Counsel have, thus, adequately represented the Class under Rule 23(e)(2)(A) and have secured "an adequate appreciation of the merits of the case." *Warfarin*, 391 F.3d at 537.

Bringing their experience and knowledge of this Action to bear, Class Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Class, to which the Court can attribute "significant weight." *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *see also Viropharma*, 2016 WL 312108, at *11 (stating that courts "'afford[] considerable weight to the views of experienced counsel regarding the merits of the settlement'"); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387

- 11 -

(E.D. Pa. 2015) ("'[A] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'"), *amended*, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016).

### B.    The Settlement Negotiations Were Conducted at Arm's Length

The second factor under Rule 23(e)(2) considers whether the Settlement was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also Warfarin*, 391 F.3d at 535 (citing arm's-length negotiations as a factor in assessing presumption of fairness).

The Parties participated in a full day of mediation on May 26, 2022, with the aid of Jed D. Melnick – an experienced, neutral third-party mediator with JAMS – and they continued to negotiate with the mediator's assistance for more than two months. ECF 79-2, ¶¶23-28. Lead Counsel analyzed the legal and factual challenges the Class faced going forward and conducted an in-depth analysis of the available materials, including the Parties' respective mediation statements, proposed discovery, and Class Plaintiffs' preliminary quantification of potential damages. This allowed Lead Counsel to make informed demands and evaluate the strengths and weaknesses of Defendants' positions. After these extensive good faith efforts, the Parties reached an agreement in principle on July 28, 2022. Negotiations over

the terms of the Settlement Agreement involved further telephone calls and email exchanges.

"Participation of an independent mediator in settlement negotiations 'virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) (quoting *Bert v. AK Steel Corp.*, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)); *accord Oliver v. BMW of North America, LLC*, 2021 WL 870662, at *9 (D.N.J. Mar. 8, 2021); *Alves*, 2012 WL 6043272, at *22. In addition, throughout the Action, Class Plaintiffs have remained committed to the Action and to advancing the interests of the Class. In sum, the factors identified in Rule 23(e)(2) weigh strongly in favor of final approval.

### C. The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

The third factor under Rule 23(e)(2), which overlaps with several of the *Girsh* factors (*i.e.*, factors 1, 4-9), concerns the adequacy of the Settlement in light of the costs, risks, and delay that trial and appeal would impose. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). "This factor 'captures the probable costs, in both time and money, of continued litigation.'" *In re Comcast Corp. Set-Top Television Box Antitrust Litig.*, 333 F.R.D. 364, 380 (E.D. Pa. 2019) (quoting *Warfarin*, 391 F.3d at 535-36 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001)).

Continued prosecution of the claims would be extensive and uncertain. The Parties would have hotly contested class certification, summary judgment would have required significant expert involvement, and attendant discovery would have been voluminous. Defendants would have argued the settlement in the *Gold Fix* matter would have released certain of the Class's claims and reduced available damages. If Class Plaintiffs were to succeed on a final judgment on the merits, which by no means would have been assured, it would have required a lengthy trial preceded by complicated and time-consuming pretrial proceedings addressing, *inter alia*, *Daubert* and *in limine* motions. The trial itself would likely span weeks and be expensive, involving not only fact witnesses, but also the presentation of many experts at substantial cost. At a minimum, proceeding through these stages of litigation would significantly prolong the time until any Class Member receives a financial recovery, if any at all, by months or even years.

Accordingly, the complexity, length, and likely duration of this Action weigh heavily in favor of approving the Settlement.

### 1. Risks of Establishing Liability and Damages

Class Plaintiffs and Lead Counsel believe that this case is strong but acknowledge the risks involved in further litigation. Defendants would have, for example, argued against class certification (the next big case milestone) on the basis

that predominance could not be shown and likely that the class faced ascertainability roadblocks.

While there are strong responses to these arguments, they pose undeniable risks. Any one of these arguments, if successful, could have resulted in the claims at issue being severely curtailed or even eliminated. *See Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (Courts should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'"). Moreover, Defendants would likely appeal any trial victory for Class Plaintiffs, which at a minimum would have resulted in substantial delays before any financial recovery. The risks associated with establishing liability and damages at trial, and preserving any trial victory through appeal, thus, weigh in favor of approving the Settlement.

### 2. The Settlement Falls Within the Range of Reasonableness

*Girsh* requires the Court to evaluate the proposed Settlement alongside "a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and . . . in light of all the attendant risks of litigation (the ninth factor)." *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010). In making a "range of reasonableness" assessment, courts do not need to make a precise estimate of damages. *See In re N.J. Tax Sales Certificates Antitrust*

*Litig.*, 2016 WL 5844319, at *8 (D.N.J. Oct. 3, 2016) (granting final approval without predicting precise value of damages).

Acknowledging significant uncertainty in this Circuit's and others' precedents in alleging and proving CEA damages,[7] the Parties disputed the quantum of provable damages in mediation. The pending *Gold Fix* settlement also introduced uncertainty as to the range of available damages in the Action. At class certification and trial, Class Plaintiffs would face the formidable task of convincing the Court they are capable of identifying, isolating, and measuring instances of illegitimate (or "spoofed") trades among millions of genuine trades in Precious Metals instruments. This would require employing and testing empirical methods that, while Class Plaintiffs contend are reliable and established in well-grounded economic principles, are novel. Accordingly, both the number and impact of spoofed trades in the market ultimately provable at trial could vary significantly. Under these circumstances, the recovery – $6.6 million – is clearly within a range of reasonableness.

### D. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

The remaining factors of Rule 23(e)(2) require courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the

---

[7]  *See, e.g.*, *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71 (2d Cir. 2022).

proposed attorneys' fees, including the timing of payment; (iii) the existence of any other "agreements"; and (iv) whether the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D). These factors are met here.

### 1. The Proposed Method for Distributing Relief Is Effective

As discussed above, the proposed methods of notice and settlement administration are effective and provide the Class Members with the necessary information to receive their *pro rata* share of the Settlement Fund. As detailed in the Declaration of Elaine Pang submitted in conjunction with preliminary approval, the method proposed for processing Class Member claims is consistent with that successfully applied in similar cases by the Settlement Administrator. *See* ECF 79-7, ¶18. The information and documentation to be provided by Class Members will be reviewed by the Settlement Administrator, who is familiar with processing these types of claims and with the types of additional documentation that are available to support Class Members and A.B. Data will seek additional information as needed to verify and process the claims.

Once the Settlement Administrator has received, reviewed, and processed all of the timely claims, they will generate an approved claims list based upon that review, provide that list to Lead Counsel and make distribution to Class Members with approved claims in accordance with the Distribution Plan approved by the

Court.  ECF 87-1, ¶27.  Further, as described in detail below, the proposed Distribution Plan allocates the Net Settlement Fund in a fair and efficient manner. *See* ECF 87-1.

### 2.    The Requested Attorneys' Fees Are Reasonable

Counsel is concurrently filing its request for an award of attorneys' fees.  That request is reasonable and appropriate.  Further, because the fee award is based on a requested percentage of an all-cash settlement, there is no risk that counsel will be paid but Class Members will not.

### 3.    The Parties Have No Other Agreements Beside an Agreement to Address Requests for Exclusion

As discussed in connection with the motion for preliminary approval, the Settlement Agreement sets forth all responsive terms and other agreements which relate to the Settlement (*i.e.*, the Supplemental Agreement).  *See* ECF 79-2, ¶34. Under the Supplemental Agreement, Defendants have a qualified right to terminate the Settlement Agreement if certain predicate conditions are met prior to final approval.  *See* ECF 79-3, ¶19(D).  Agreements of this type are standard in complex class action settlements and do not impact the fairness of the Settlement.  *See*, *e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (Court "not troubled" by similar agreement because ". . . those kind of opt-out deals are not uncommon as they are designed to ensure that an objector

cannot try to hijack a settlement in his or her self-interest.").  None of the predicate conditions have arisen.

### 4.    Class Members Will Be Treated Equitably

Rule 23(e)(2)(D) requires the Court to consider whether Class Members will be treated equitably.  All Class Members will be treated equitably under the terms of the Settlement Agreement, which provides that each Class Member that properly submits a valid Proof of Claim form will receive a *pro rata* share of the monetary relief based on the terms of the Distribution Plan.  ECF 79-6.

"When assessing proposed plans of allocation, courts utilize the same standard for determining whether to approve the settlement itself."  *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 648 (E.D. Pa. 2015).  "Therefore," the *Toys R Us* court explains, "the proposed plan needs to be fair, reasonable and adequate."  *Id.*  Importantly, the district court "must determine whether the compromises reflected in the settlement – including those terms relating to the allocation of settlement funds – are fair, reasonable, and adequate when considered from the perspective of the class as a whole."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013); *see also Cendant*, 264 F.3d at 248.  "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable."  *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000).  "A district court's 'principal obligation' in approving a plan of allocation 'is

simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)).

The proposed Distribution Plan sets forth how claims will be reviewed and processed, and how the Settlement Fund will be allocated and disbursed. Allocation plans such as this are routinely used and approved in class action litigation. ECF 79-6. Based on the claimants' validly submitted Claim Form, the Settlement Administrator will calculate each Class Member's *pro rata* share of the Net Settlement Fund, taking into account the specifics of the claimed volume and instrument type as reconciled against transaction data provided by Defendants and analyzed by Lead Counsel. This plan is efficient and equitable. Authorized Claimants with a higher trading volume can expect a proportionately larger share of the Settlement, as adjusted to account for the frequency and impact of Defendants' alleged spoofing. For claimants whose expected distribution would be less than the costs of administering the claim, the Settlement Administrator will implement a reasonable minimum payment, thereby minimizing the administrative burden on the Net Settlement Fund. Therefore, the factor weighs in favor of final approval.

## V.    THE COURT SHOULD CERTIFY A SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

The Parties agree that the Court should certify the Settlement Class for the purpose of settlement pursuant to Rules 23(a) and (b)(3). The propriety of certifying

a class for purposes of settlement is well established in this Circuit. *See, e.g.*, *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 583 (3d Cir. 2014) ("[P]reliminary analysis of a proposed class is . . . a tool for settlement used by the parties to fairly and efficiently resolve litigation."); *In re Pet Food Prods. Liab. Litig.*, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23.").

Certification of a settlement class is "'the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'" *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012). Importantly, manageability is not an issue in deciding whether to certify a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

### A.    The Settlement Class Satisfies Rule 23(a)

Rule 23(a) permits certification if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also In re Imprelis*

- 21 -

*Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 2013 WL 504857, at *3 (E.D. Pa. Feb. 12, 2013).  The Settlement Class meets each requirement.

### 1.    The Settlement Class is Sufficiently Numerous

To date, more than 5,000 Notices have been sent to potential Class Members. ECF 87-1, ¶9.  This indicates numerosity is met.  Numerosity is satisfied where the proposed class is so large that the traditional joinder of parties would be "'unworkable.'"  *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, 2006 WL 891362, at *5 (D.N.J. Apr. 4, 2006).

### 2.    Common Questions of Law and Fact Bind the Settlement Class

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class."  Importantly, "Rule 23(a)(2)'s commonality requirement 'does not require identical claims or facts among class member[s].'"  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012).  "'The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'"  *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (answers to common question must help "drive the resolution" of the litigation).  Courts in this Circuit have found commonality easily met in similar class actions.  *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998) (predominance readily met in RICO action alleging

common scheme).  The same is true here.  Class Plaintiffs' allegations focus on the alleged misconduct of Defendants – an issue that does not vary for any Class Member.  Common questions include:  Class Plaintiffs' allegations focus on the alleged misconduct of Defendants – an issue common to all members of the Settlement Class.  All Class Members share the following legal and/or factual questions:

- Whether Defendants engaged in fraudulent and manipulative trading practices in connection with the purchase and sale of gold, silver, platinum, and palladium futures contracts;

- Whether the Defendants' conduct violated the CEA and common law; and

- The nature and extent of monetary damages to which Class Plaintiffs and the Settlement Class are entitled.

Because there are several common legal and factual questions related to liability, the commonality requirement of Rule 23(a)(2) is easily met.

### 3.    Class Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that the class representatives' claims be "typical of the claims . . . of the class."  As the Third Circuit explained:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.

*Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994); *see also Marcus*, 687 F.3d at 598 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives

rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class."). Moreover, the "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *See Prudential*, 148 F.3d at 311. Here, the claims of Class Plaintiffs are typical compared to those of other members of the Settlement Class where the claims arise out of the same alleged conduct by Defendants and are based on the same legal theories. This satisfies Rule 23(a)(3).

### 4.    Class Plaintiffs and Lead Counsel Are Adequate

Rule 23(a) requires that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement guarantees "that the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977).

Class Plaintiffs and Lead Counsel have for more than three years adequately represented the interest of the Settlement Class and continue to do so. There is no conflict between Class Plaintiffs and Class Members. Counsel is highly experienced

in complex class actions related to various financial instruments and have diligently prosecuted the Action on behalf of the Settlement Class.  Adequacy is satisfied here.

**B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Settlement Class meets this standard.

**1.    Common Legal and Factual Questions Predominate**

To satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "'the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit.'"  *Sullivan*, 667 F.3d at 297 (quoting William Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §4:25 (4th ed. 2010)).  The touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 594.  This rule, however, "does not require a plaintiff seeking class certification to prove that each 'element of her claim is susceptible to classwide proof.'"  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013).  Rather, predominance is determined by whether "the efficiencies gained by class resolution of common issues

are outweighed by individual issues." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (predominance requires that "common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members"). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. The mere existence or possibility of some individual issues does not defeat certification. *See Mercedes-Benz*, 213 F.R.D. at 186.

Here, Class Plaintiffs and the Settlement Class all traded Precious Metals Futures contracts and Options on those contracts traded on the COMEX and NYMEX. They all have the same interest in establishing liability and they all seek damages as a result of the price artificiality that Defendants' conduct introduced into the market. Predominance is satisfied.

## 2. A Class Action Is Superior to Other Methods of Adjudication

In addition to predominance, Rule 23(b)(3) requires a showing that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To this end, the Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication. *Prudential*, 148 F.3d at 316. Further,

in evaluating the superiority of a class action, the Court should inquire as to the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class, and the desirability or undesirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, a class action is superior to other available methods of adjudication "because litigating all of these claims in 'one action is . . . far more desirable than numerous separate actions litigating the same issues.'"  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009).  By proceeding as a class action, resolution of common issues will lead to an efficient use of judicial resources and a result that is binding on all members.  In addition, the Class Members, like the Class Plaintiffs, are geographically dispersed, which poses the risk of multiple scattered lawsuits with contradictory results.  These issues led the Supreme Court to acknowledge these factors as leading to a finding that a class action is superior to other forms of adjudication.  *Amchem*, 521 U.S. at 617.  This, of course, applies with even greater force where the class-wide resolution is accomplished by a settlement.

## VI.    THE COURT SHOULD APPROVE THE PROPOSED DISTRIBUTION PLAN

The Distribution Plan details how the Settlement proceeds are to be divided among Class Members who submit claims.  *See* ECF 79-6.  As discussed above, the proposed Distribution Plan is fair and reasonable.  *See, e.g.*, *In re Par Pharm. Sec.*

*Litig.*, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013) (approving similar plan of allocation); *Viropharma*, 2016 WL 312108, at *15 (same). For all of these reasons, the Distribution Plan should be approved.

## VII.  CONCLUSION

For all the reasons stated above and in the accompanying declarations, Class Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement and the Distribution Plan.

DATED:  September 7, 2023          Respectfully submitted,

CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.


s/ James E. Cecchi
JAMES E. CECCHI

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com

Court/Government Liaison for Plaintiffs

ROBBINS GELLER RUDMAN
 & DOWD LLP
ALEXANDRA S. BERNAY (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
xanb@rgrdlaw.com

NUSSBAUM LAW GROUP, P.C.
LINDA P. NUSSBAUM (*pro hac vice*)
1211 Avenue of the Americas, 40th Floor
New York, NY  10036
Telephone:  212/702-7053
212/681-0300 (fax)
lnussbaum@nussbaumpc.com

KOREIN TILLERY, LLC
CHRISTOPHER M. BURKE (*pro hac vice*)
707 Broadway, Suite 1410
San Diego, CA  92101
Telephone:  619/625-5621
314/241-3525 (fax)
cburke@koreintillery.com

KOREIN TILLERY LLC
GEORGE A. ZELCS (*pro hac vice*)
205 North Michigan Plaza, Suite 1950
Chicago, IL 60601
Telephone: 312/641-9750
312/641-9751 (fax)
gzelcs@koreintillery.com

SCOTT+SCOTT
   ATTORNEYS AT LAW LLP
KRISTEN M. ANDERSON (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Telephone:  212/233-6444
212/233-6334 (fax)
kanderson@scott-scott.com

Interim Co-Lead Counsel for Plaintiffs